## IN THE UNITED STATES DISTRICT COURT, FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **TAYOR DUNCAN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | CASE NO. 21 CV __ |
| v. | ) | Judge _____ |
| | ) | |
| **CWPILL,** | ) | Jury Trial Demanded |
| **Defendant.** | ) | |

## COMPLAINT

Claimant, Taylor Duncan ("Mr. Duncan"), by and through his undersigned counsel, states as follows as his Statement of Claim against Respondent, CWPILL.

**I.  Background**

*The Parties*

1. Mr. Duncan is an Illinois resident.

2. CWPILL is a Nevada corporation. CPWILL is a citizen and resident of the State of Nevada, with its corporate headquarters and principal place of business located in the State of California.

*The Parties' Employment Agreement*

3. On or about May 15, 2008, Mr. Duncan and CWPILL entered into an Employment Agreement ("Agreement"). A true and correct copy of the Agreement is attached hereto.

4. The Agreement contains an Arbitration provision, purporting to provide AAA Arbitration tribunal with exclusive jurisdiction for resolving claims between the parties under the Agreement. *See* Agreement, at p. 4, paragraph 8.1. However, that provision is invalid, void, and unenforceable because it does not indicate that the parties, much less Mr. Duncan, have agreed to waive their rights to try matters before a jury. *Id.*

5. The Agreement was amended by the parties, in writing, on or about October 15, 2010.

*See* Amendment No. 1, a true and correct copy of which is attached hereto.

6. The Agreement was amended by the parties, in writing, on or about June 5, 2011. *See* Amendment No. 2, a true and correct copy of which is attached hereto.

7. The Agreement, including as amended, obligated CWPILL to pay certain monies to Mr. Duncan in exchange for him providing certain services provided to it. *Id.*

8. For example, CWPILL was contractually obligated to pay Mr. Duncan a modest salary as "Base Compensation." *See* Paragraph 1.3.1. CWPILL made those salary payments to Mr. Duncan.

9. In addition, CWPILL was also contractually obligated to pay Mr. Duncan, on an annual basis and after the close of its fiscal year, a share of the profits of CWPILL – pursuant to a formula. *Id.* at paragraph 1.1. In short, CWPILL was obligated to pay Mr. Duncan 15% of CWPILL's adjusted profits. *Id.*

10. During the time period from the inception of the Agreement through the end of fiscal year ending in or about October 2019, CWPILL made annual, year-end payments to Mr. Duncan pursuant to paragraph 1.1 of the Amended Agreement.

11. However, in each and every one of those years, CWPILL breached the Agreement in making each and every one of those payments.

12. In short, instead of paying Mr. Duncan in accordance with the Agreement's formula, CWPILL instead knowingly and intentionally paid Mr. Duncan significantly lesser sums than he was owed by improperly and fraudulently reducing CWPILL's profits by assigning to it debts and expenses that were *not* those of CWPILL.

13. By way of example and not all inclusive, CWPILL took on the costs and debts of its parent company, National Services Group or "NSG," including office costs; salary and expenses for NSG's CFO, COO, and other Executive Overhead (referred to by NSG itself as "EOH"); costs to settle lawsuits wholly unrelated to CWPILL; NSG's "chargeouts;" self-insurance/captive insurance charges; other business-related expenses solely attributable to NSG; and other NSG businesses and "research and development," including CW Home Inspectors ("Carpentry Model"), Empire Commercial Coatings, "ISM," and Sale/Sub-Model.

14. Thus, CWPILL improperly, knowingly, and intentionally, calculated the adjusted profits

due and owing to Mr. Duncan under the terms of the Agreement, as amended, such that they were lower than they should have been by hundreds of thousands of dollars based upon the various "fees" that CWPILL took on for NSG.

15. Accordingly, CWPILL intentionally substantially underpaid Mr. Duncan of the amended Agreement in each and every one of those years, i.e., in 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019 – under section 1.1 of Amendment No. 2 to the Agreement.

16. The precise amounts still outstanding and due and owing to Mr. Duncan has yet to be determined, particularly in light of the fact that Respondent has control over the documents and data necessary to fully and legitimately calculate those amounts.

17. However, upon information and belief, those sums are, conservatively, in excess of the total amount of $150,000 (one hundred and fifty thousand dollars).

18. In addition, CWPILL has failed and refused to pay the monies due and owing to Mr. Duncan for the most recent fiscal year under the Agreement, i.e., that ending October 31, 2020.

19. The precise amounts still outstanding and due and owing to Mr. Duncan or that additional durational term has yet to be determined, particularly in light of the fact that Respondent has control over the documents and data necessary to fully and legitimately calculate those amounts.

20. However, that sum is believed to be approximately $50,000 (fifty thousand dollars).

21. CWPILL was also contractually obligated under the Agreement, as amended, to pay to Mr. Duncan a "Growth Bonus," pursuant to a formula. *See* Amendment No. 2 to Agreement, at Exhibit A, at section 1.3.2.

22. However, much like CWPILL's machinations with regard to Mr. Duncan's adjusted profits, CWPILL similarly and intentionally denied Mr. Duncan the full extent of the sums that he was entitled to receive as his yearly Growth Bonus (under section 1.3.2 of Exhibit A to the Amended Agreement) by falsely carrying out and calculating the formula for the payment of that bonus in each of the years between 2011 and 2019.

23. Mr. Duncan has made demand upon CWPILL, including in writing through counsel, for all of the above-referenced sums.

24. CWPILL has failed and refused to make payment to Mr. Duncan in accordance with its obligations pursuant to the terms of the Agreement.

**Legal Claim**

**Breach of Contract**

25. Mr. Duncan re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 24 above, as though fully set forth herein, as Paragraph 25.

26. The parties' Agreement constitutes a valid, binding, and enforceable contract that was supported by good, valuable, and adequate consideration.

27. Mr. Duncan has satisfied all of his material obligations under the Agreement, including all conditions precedent.

28. CWPILL has materially breached the Agreement by, *inter alia*, intentionally failing and refusing to pay Mr. Duncan the sums referenced above.

29. As a direct and proximate result of CWPILL's breaches of the Agreement, Mr. Duncan has suffered substantial monetary damages.

**WHEREFORE**, Claimant, Mr. Duncan, by and through his undersigned counsel, respectfully requests that the Court enter an Order: awarding and entering judgment in his favor and against the Defendant, in an amount far in excess of the $75,000 jurisdictional minimum, exclusive on interests and costs, and to be more fully proven by way of discovery and trial, for pre-judgment and post-judgment interest; for his reasonable attorneys' fees and costs; and for any all other such other and further relief as is appropriate under the circumstances.

**RESPECTFULLY SUBMITTED,**

**By: s/Michael I. Leonard**

**Attorney for Plaintiff**

**JURY TRIAL DEMANDED**

**LEONARD TRIAL LAWYERS LLC**

Michael I. Leonard

Rebecca Alexander

120 N. LaSalle Street, 20th Floor

Chicago, Illinois 60602

312-380-6559 (office)

312-264-0671 (fax)